415 So.2d 574 (1982)
Coleman WHITE and Jimmy White, Plaintiffs & Appellants,
v.
CUMIS INSURANCE SOCIETY, et al., Defendants & Appellees.
No. 8639.
Court of Appeal of Louisiana, Third Circuit.
May 26, 1982.
*576 William Henry Sanders, Norris Dale Jackson, Jena, for plaintiffs & appellants.
Stafford, Stewart & Potter, Grove Stafford, Jr., Alexandria, for defendants & appellees.
Before CULPEPPER, FORET and DOUCET, JJ.
CULPEPPER, Judge.
This is a tort action arising from an automobile accident in which the vehicle occupied by the plaintiffs was rear-ended by a car driven by the defendant's insured, Mrs. Jean Sooter. A jury found Mrs. Sooter's negligence was the sole cause of the accident, but denied damages to either plaintiff. Plaintiffs appeal. We affirm.
The plaintiff, Coleman White, contends: (1) The jury erred in finding Coleman White sustained no damages as a result of this accident. (2) The trial judge erred in refusing to allow introduction of the entire hospital record of Coleman White. (3) The court erred in excluding the testimony of Dr. Riaz Chaudhry.
The plaintiff, Jimmy White, contends: (1) The jury erred in finding that Jimmy White sustained no damages as a result of the July 26, 1979 accident. (2) The trial court should have granted Jimmy White's request to sever the trial of his cause of action from that of Coleman White.

FACTS
The accident occurred on Louisiana Highway 8 in LaSalle Parish on July 26, 1979. The jury's finding that Mrs. Sooter's negligence was the sole cause of the accident is not contested on appeal. The central issue involves the fact that on June 25, 1979, one month before this collision, the plaintiffs were involved in another rear-end collision. The suit arising from that accident was settled by the plaintiffs for $15,000. The question in the instant case is which of the two accidents caused the damages claimed by plaintiffs.
In the June accident, the plaintiffs were struck from behind by a pickup truck proceeding at an estimated 60 miles per hour. Their vehicle, a Chevy Luv truck, was hit twice by the pickup truck and knocked into a telephone pole.
Plaintiffs were in the same vehicle when the second accident occurred. It was estimated that defendant's insured, Mrs. Sooter, was traveling at approximately 30 to 40 miles per hour at the time of impact, since she had been going 50 but had released the accelerator and tried to brake upon seeing the plaintiff's vehicle. There was only one impact, and the state trooper who investigated considered this simply a minor accident.

FAILURE TO AWARD DAMAGES
The jury refused to award damages to either plaintiff because it did not believe that either of them was injured as a direct result of the accident in this case. The major contention of plaintiffs on appeal is that this finding by the jury is clearly wrong. They argue that the evidence shows that both Coleman and Jimmy White were injured in the July 26 accident.
We recognize that a jury may not refuse general damages where there are objective injuries and resulting medical expense. Robinson v. General Motors Corporation, 328 So.2d 751 (La.App. 4th Cir. 1976); Brown v. Grigsby, 394 So.2d 847 (La.App. 3rd Cir. 1981). Also, the defendant takes his victim as he finds him. Hale v. Champagne, 365 So.2d 55 (La.App. 3rd Cir. 1978). Nevertheless, in situations involving multiple accidents, whether preceding or subsequent to the accident at issue, it is well settled that a tortfeasor is liable only for the direct and proximate results of his wrongful act. Comeaux v. Barksdale, 342 So.2d 1181 (La.App. 1st Cir. 1977).
Furthermore, the plaintiff has the burden of proving by a preponderance of *577 the evidence the causal connection between the accident and the injuries claimed. Coleman v. Victor, 326 So.2d 344 (La.1976); Comeaux v. Barksdale, supra. Whether or not this burden has been sustained is a question for the trier of fact and its finding will not be disturbed on appeal unless clearly wrong. Dofflemyer v. Gilley, 384 So.2d 435 (La. 1980); Hale v. Champagne, supra.
Of particular relevance in the present case is the statement by this Court in Guidry v. Davis, 382 So.2d 250 (La.App. 3rd Cir. 1980):
"[1,2] It is also well settled that the jury or trial judge may, and should, assess the credibility of experts who testify at the trial, as well as that of lay witnesses, to determine the most credible and realistic evidence and the fact finder's determination of the credibility of those witnesses will not be disturbed unless found to be clearly erroneous. Green v. State, Southwest Louisiana Charity Hosp., 309 So.2d 706 (La.App. 3 Cir. 1975); Monette v. Aetna Cas. & Sur. Co., 352 So.2d 423 (La.App. 3 Cir. 1977). After weighing and evaluating all of the medical evidence, and in most cases the lay testimony, relating to the injuries sustained by a plaintiff, the jury or trial judge may accept or reject the opinion expressed by any medical expert, depending upon how he is impressed with the qualifications and the testimony of that expert. Touchet v. Fidelity and Casualty Co. of New York, 264 So.2d 752 (La.App. 3 Cir. 1972)."
With regard to the injuries of Coleman White, it was testified by Mrs. Sooter that he had no complaints of pain immediately after the accident and assured her that both he and Jimmy were alright. The investigating trooper also testified that Coleman White made no complaint of injury to him. The witness from the body shop which gave Mr. White an estimate on repairing the damage to his truck from the first accident testified that the vehicle had not been repaired between the first and second accidents, and that the additional damage from the second accident was slight. Mr. White, however, testified that it had been repaired and that all the present damage resulted from the July accident.
The testimony of both Mr. White and the neurologist, Dr. John McCutchen, established that he had the same complaints after both the June and the July accidents. Dr. McCutchen testified that his examination of July 27, the day after the accident in question, showed Coleman White's condition to be essentially unchanged from the last time he had seen him, and "unremarkable." Mr. White has had a long history of back problems, beginning at least 25 years ago. Dr. McCutchen acknowledged that in his diagnosis he must rely heavily on the history which he is given by his patient, and that any major misstatement in that regard could cause an error in his conclusions. He also stated that he had hospitalized Mr. White after each accident and that the diagnosis of his condition was the same on both occasions. Defendants' expert, Dr. T. E. Banks, testified that this would indicate to him that the most likely cause of Coleman's condition was the accident of June 25.
A careful review of the record reveals several inconsistencies between Coleman White's testimony on direct examination and on cross-examination. Also, Donald Gucker, the defendants' expert in psychology, testified he had examined Coleman and concluded he showed a "fake sick" profile, i.e., acting as if he is much more sick than he actually is.
In light of the fact that the jury and the trial judge are in the best position to evaluate the credibility and demeanor of witnesses in the trial court, our reading of the record leads us to conclude that no manifest error exists in the jury's finding that the second accident was not the cause of the injuries for which Coleman White claims damages.
As for Jimmy White, the record is devoid of any objective evidence to show that he suffered any injury as a result of the accident in question. The owner of the auction barn where he worked one day a *578 week testified that he missed work during this period of time, but that his absence from work commenced at least two weeks before the first accident. Then he returned to work in September, 1979, and made no complaints about neck, back or leg pain. The only evidence that he made any complaints of pain immediately following either accident was the testimony of his father. Dr. Turnley, the family physician, examined Jimmy on July 31, 1979, five days after the accident, and found no objective evidence of any injuries. There was no muscle spasm nor any restriction of motion. In April, 1981, he began having complaints of severe pain, but the doctor testified that there was no way of knowing what was causing the new problem. We discern no clear error in the jury's denial of damages to this plaintiff.

EXCLUSION OF MEDICAL EVIDENCE
Plaintiff, Coleman White, further cites as error the trial court's exclusion of evidence which he sought to introduce to prove that the accident in question was also a cause of the heart attack he later suffered. Allegations to this effect were not included in the original petition. Mr. White sought permission to include such allegations on the first day of the trial. The trial court denied the motion to amend and excluded the proffered evidence as being outside the pleadings.
We find no error in this ruling. Amendment and supplementation of a petition may be done after filing of the answer by leave of court, but is within the sound discretion of the trial judge. See LSA-C.C.P. Articles 1151, 1155; Sikes v. McLean Trucking Company, 383 So.2d 111 (La.App. 3rd Cir. 1980). This ruling will not be disturbed on appeal unless there has been an abuse of the broad discretion vested in him. Independent, Inc. v. Watson, 394 So.2d 710 (La. App. 3rd Cir. 1981).
As noted by this Court in Calvary Tabernacle v. Louisiana Central Bank, 384 So.2d 814 (La.App. 3rd Cir. 1980), reversed on other grounds, 393 So.2d 708 (La.1981), the most important consideration in granting or refusing permission to amend is whether the opponent is unfairly prejudiced. The plaintiffs' request here on the very day set for trial sought to add a new element of damages of which the defendant had no prior notice, and gave them no opportunity to prepare to rebut. We find no abuse of discretion by the trial court.

MOTION FOR SEVERANCE
Plaintiff, Jimmy White, contends the trial court erred in refusing his request for severance of the trial of his cause of action from that of his father. He argues that he was prejudiced by the denial because the antagonism between the attorney for the defendant and his father, Coleman White, caused the jury to become inflamed against both plaintiffs. This specification of error is without merit.
These plaintiffs voluntarily joined in one suit pursuant to the statutory authority of LSA-C.C.P. Articles 463 and 647.[1]
The court does have authority to order a separate trial of even properly cumulated actions at any time prior to trial, where it would simplify the proceedings, permit a more orderly disposition of the case, or otherwise would be in the interest of justice. See LSA-C.C.P. Article 465. The decision to sever or not is within the sound discretion of the trial court, but he may grant the motion only if he finds that the case falls within the scope of the code article. Johnson v. Marvin Cutrer Contractor, 348 So.2d 1256 (La.App. 2d Cir. 1977).
*579 In the instant case, the claims of both plaintiffs arose out of the same automobile accident, and the contested issues of both claims rested on the same evidence, including both lay witnesses and expert medical testimony. In light of the voluntary joinder of Jimmy White and Coleman White as plaintiffs, and considerations of judicial efficiency and economy having both claims heard by one jury, we find no abuse of discretion in the trial court's denial of the motion to sever.[2]
For the above and foregoing reasons, the judgment appealed is affirmed. All costs of this appeal are assessed against plaintiffs-appellants.
AFFIRMED.
NOTES
[1] Two or more parties may be joined in the same suit, either as plaintiffs or as defendants, if:

(1) There is a community of interest between the parties joined;
(2) Each of the actions cumulated is within the jurisdiction of the court and is brought in the proper venue; and
(3) All of the actions cumulated are mutually consistent and employ the same form of procedure.
The permissive joinder of two or more plaintiffs or defendants in the same suit is governed by the rules regulating the cumulation of actions provided in Articles 463 through 465.
[2] It might be noted that LSA-C.C.P. Article 465 is primarily for the purpose of protecting the rights of defendants involuntarily joined in the same suit by plaintiffs, and not plaintiffs who presumably desired to be joined when they filed suit together (see the Comments thereto).